BURKE *v.* BOARD OF IMPROVEMENT PAVING DISTRICT No. 5.

Opinion delivered October 25, 1915.

1. LOCAL IMPROVEMENT—STREETS AND SIDEWALKS—NOTICE AND PROPOSAL FOR BIDS—CONTRACT.—The contract for certain paving and sidewalk construction being unambiguous, and the notice and proposal for bids containing the approximate amounts of the different kinds of paving, they can not be construed to be a part of the contract, and having been omitted therefrom, must be considered only as belonging to the preliminary and antecedent negotiations.

2. LOCAL IMPROVEMENT—STREETS—CHANGES.—A street improvement district must permit the contractor to put down all of, and the kind of, paving provided by the contract and designated by the engineer, as long as the contract continues in force, and can not, under the guise of making alterations under a section of the contract, take a substantial portion of the work from the contractor, and deprive him of the benefit of the work, by awarding it to others.

3. LOCAL IMPROVEMENT—PAVING DISTRICT—STREETS—RIGHT OF CONTRACTOR TO COMPENSATION.—When a street improvement district takes a portion of the work from the contractor, for reasons set out in the contract, and lets the same to others, the original contractor may recover from the district the difference between the cost to the district and the contract price.

Appeal from Sebastian Chancery Court; *James D. Shaver,* Chancellor, on exchange; modified and affirmed.

*Pryor & Miles, John H. Vaughan,* and *J. V. Bourland,* for appellants.

*Kimple & Daily,* for appellees.

KIRBY, J.  This suit was brought by Burke Bros. for an accounting and to recover the balance claimed to be due under a contract with Improvement District No. 5 of the City of Fort Smith, for paving the streets of said city. The contract provided for paving the roadways of all the streets of said city and the work was carried on by them during a period of 5 or 6 years, after they had erected a brick manufacturing plant at an expense of

near $150,000, in the City of Fort Smith to comply with the terms of the contract in furnishing brick manufactured in Fort Smith for the work.

A great mass of testimony was introduced and the record is voluminous. A master was appointed by the chancellor and reported his findings on the different claims made, and upon exceptions to the master's report, the chancellor found in favor of appellants on their claim for retained percentage $38,297.86, of the amount due for paving, and for pine headers $197.88, and for iron gutter plates, $377.00 and rendered a decree for the whole sum, $42,260.88 found to be due, from which Burke Bros. appealed, contending that the chancellor erred in finding against them on their other claims and in reducing their claims on the items for pine headers and iron gutters.

The court held against appellees on all claims made by way of counter-claim and set-off and they also appealed.

In the notice and proposal for bids sent out by the district it was stated ''The approximate quantities upon which bids will be received and compared are as follows:

''Square yards of completed brick pavement laid on sand foundation, 20,000 sq. yd.

''Square yards of completed brick pavement laid on concrete foundation, 20,000 sq. yd.

''Cubic yards of concrete in place for gutterways, 4,000 cu. yd.

''Pounds of cast iron cover plates for gutterways, 300,000 pounds.''

The bidders were also advised ''to make such examinations as may be necessary to inform themselves in respect to present conditions of the streets and local surroundings before submitting proposals.''

Appellants' bid of 81 3-4 cents per square yard for the pavement on sand foundation, $1.46 per square yard for pavement on concrete foundation, $12.00 for each yard of concrete in place for guttering, and 3 cents per-pound for iron covers for gutter ways, all materials to be furnished and work done by the bidder, was the lowest

bid and accepted by the board and a contract made with them.

The contract as entered into for the construction of the paving, contains no provision relative to the particular kind and amount of paving to be done and makes no reference to the proposals for bids, nor bids received, except it recites that Burke Bros., party of the first part, "in competition submitted the lowest and best tender for constructing the paving improvement in Paving District No. 5, of the City of Fort Smith, Arkansas, said improvement being as follows, viz.: "The construction and completion of the paving of the roadways of the streets and avenues in said Paving District No. 5, as indicated by said board of improvement, and furnishing the necessary labor, materials, tools and plant therefor." The other provisions necessary to be set out are Sections 9, 14 and 15 of the contract and the specifications relating to concrete and gutterways as follows:

"9. If, in the judgment of the engineer, the work is not being pushed with the degree of activity necessary to its completion within the specified time, then it shall be at his option upon written notice and approval of the board, to employ such additional force of men as may be required, and to purchase material in open market and deduct the cost thereof from money due the contractor.

"14. The engineer, in concurrence with the board, shall have the right to make alterations in the line, grade, plan, form and quantity of the work herein contemplated, either before or after the commencement of the work.

If such alterations diminish the quantity of the work to be done, they shall not constitute a claim for damages on anticipated profits on the work dispensed with; if they increase the amount of work, such increase shall be paid for according to the quantity actually done, and the price or prices stipulated for such work in this contract."

"15. In consideration of the completion by the said first party of all work embraced in this contract in conformity with the specification and stipulations herein contained, the Board of Improvement of Paving District

No. 5 of the City of Fort Smith, Arkansas, party of the second part, hereby agrees to pay said first party the following prices:

For each square yard of completed brick pavement laid on sand foundation the sum of eighty-one and three-quarter cents (81 3-4 cents) dollars;

For each square of completed brick pavement laid on concrete foundation the sum of one and forty-six one hundredths ($1.46) dollars.

For each cubic yard of concrete in gutterways, the sum of twelve ($12.00) dollars;

For each pound of cast-iron cover for gutterways, the sum of three (3) cents.

"Concrete. If upon any street to be paved the Board of Improvement should decide to use a concrete base due to the presence of street or steam railway tracks, or for any other cause, the engineer may order that the surface of the subgrade be brought eleven (11) inches below and parallel with the finished cross-section of the street, and that upon this subgrade, when properly prepared, there shall be laid a layer of Portland cement concrete, not less than five (5) inches in thickness when tamped. * * *"

"Gutter-ways. At such street and alley intersections as may be designated by the engineer there shall be constructed by the contractor, as a part of the street pavement, covered gutters or waterways, the same to conform to the details therefor on file. * * * "

Appellants after constructing a plant for the manufacture of paving brick out of shale, at Fort Smith, which required almost two years, proceeded with the work of paving the streets as they were designated for that purpose by the engineer of the district. They were delayed greatly in the prosecution of the work of paving by the failure of the property owners to construct the sidewalks and curbs on the abutting property and were compelled often to move their working companies and appliances to different streets or to different sections of the same street in order to continue the work without too great

break or delay. Neither the paving district nor the contractors were at fault for the failure of the property-owners to sooner construct their sidewalks and curbs. The city attempted to compel the construction by an ordinance which was declared void by this court and finally by another ordinance passed after a grant of power by the Legislature succeeded in having it done.

There was much friction between the board and the contractors, each contending that the other was at fault in the performance of the contract; the contractors insisting that they were being arbitrarily required to move to different and distant places at great expense and loss of time; that they were harassed by numerous inspections and rejections of brick captiously made and the board claiming that the brick used and attempted to be put down in paving was not of the kind and quality contracted to be used and did not meet the test prescribed; also that the contractors were furnishing brick from their plant to be used and using them on other contracts and improvements at different places, outside of Fort Smith. Certain paving on sand foundation was done in some of the gutters, which should have been done by the property owners and likewise in the alleys, but which was done by the contractors at the regular price to the district and for which the property owners paid the commissioners $1.00 per yard. Payments for the work were made in accordance with the schedule of prices fixed in Section 15 of the contract upon monthly estimates of the engineer, less 10 per cent of the amount of the estimates retained by the board, in accordance with the contract, until the completion and acceptance of the work.

Certain designated streets and portions of streets were paved by the district with concrete after the board of improvement and engineer notified the contractors that it would be done in exercise of the option reserved in Section 9 of the contract, to employ additional forces of men and purchase materials in the open market, for the construction of the work, such notices assumed for the purpose of it only, that the contract was still exist-

ing and expressed that the engineer, with the concurrence of the board, had the power (which was denied by the contractors), under Section 15 providing for the alterations, to diminish the quantiy of work contemplated under the contract, by eliminating therefrom the streets designated for concrete pavement by the board.

As already said, the volume of testimony is great and in many instances it is in direct conflict. Especially is this true relative to the conduct of the engineers and the improvement district in the designation and failure to designate streets to be paved and in the inspection and rejection of the brick to be used and in the action of the district in failing to have the curb and guttering completed that the paving could be continued, as well as in the kind and quality of brick furnished and used in the paving, none of which it was claimed came up to the test required by the specifications. No useful purpose can be served by setting out the testimony in detail and it will suffice to say that it supports the findings of the chancellor upon all claims, upon which judgment was rendered in appellant's favor and that his findings upon any and all other matters except as indicated herein, are not clearly against the weight or the preponderance of the testimony.

The proposals for bids sent out by the board of improvement, with instructions to bidders stating the approximate amount and kinds of paving to be done, did not become a part of the contract, not being included nor referred to therein and the contract having afterwards been prepared and executed without any agreement for or designation of a certain amount and kind of paving to be done, the price alone for the certain kinds or units of a class being stipulated in said Section 15 thereof. The contract provides for, ''The construction and completion of the paving of the roadways and streets and avenues in said Paving District No. 5, as indicated by said board of improvement and furnishing the necessary labor, materials, tools and plant therefor.'' ''And to complete the work in strict conformity with the details

and plans for said work on file in the office of the said
board of improvement, and according to the specifica-
tions hereinafter contained and made part of this con-
tract, and in compliance with the directions of the said
board of improvement, or their duly authorized agents,
and to the satisfaction and acceptance of said board.''

(1)    The contract being unambiguous, the notice
and proposal for bids containing the approximate
amounts of the different kinds of paving can not be con-
strued to be a part of it, having been omitted therefrom,
and must be considered only as belonging to the prelimi-
nary and antecedent negotiations. *Soudan Planting Co.*
v. *Stevenson*, 83 Ark. 163; *Tedford Auto Co.* v. *Thomas*,
108 Ark. 503.

(2)    The district was not bound to give the con-
tractors the number of square yards of completed brick
pavement on concrete foundation and the number of
cubic yards of concrete in place for gutterways men-
tioned in the proposal for bids, the contract not provid-
ing therefor, but it was bound to permit them to put
down in concrete all the gutterways that were designated
by the engineer and all the kinds of pavement that were
required to be made in paving the streets so long as the
contract continued in force. In other words the district
could not, under the guise of making alterations under
the provisions of Section 14 of the contract, take from
the contractors certain designated streets a substantial
portion of the work contracted to be done, and deprive
them of the benefit thereof by giving it to other contract-
ors or having the work done itself. *Kieburtz* v. *Seattle,*
146 Pacific 400.

Such would not be the case of a loss suffered be-
cause of the performance of the work required by the
contract on account of a change in the plans increasing
the number of units of work in the one class and decreas-
ing the number of units in another. The court is of
opinion however that the district did not attempt to de-
prive the contractors of the work, but only to pave said
designated streets at the expense of the contractors

under the provisions of said Section 9 of the contract, because the work was not being dispatched by the contractors as rapidly as the board thought it should be done, in order to the completion of the paving within the time given therefor.

(3)   Appellants were therefore entitled to recover for said paving the difference between the cost thereof per yard to the district and the price agreed to be paid them for pavement, on a concrete foundation which was ten cents per square yard on 105,000 square yards of pavement, amounting to $10,500, as found by the master.

The parties appear to have disregarded and waived the provisions of the contract in many particulars, the district appearing to have endeavored to get all the pavement laid on a sand foundation, out of the best brick that could be manufactured by the contractors at their plant from the material available, while the contractors appeared desirous of making the best paving brick that could be manufactured under the existing conditions and using them in the laying of the pavement on the streets designated, with proper expedition and dispatch. Both parties appear finally to have waived and disregarded all the provisions of the contract, except only those relating to the price and payment for the pavement laid of the best brick that the commissioners could get the contractors to make and use therein and the rattler test was never insisted upon, the parties appearing to have recognized that the brick that could be manufactured at the contractors' plant, would not stand this test, and to have accepted instead the best brick that could be manufactured from the materials available to the plant and that were of a standard of quality equal to those that had theretofore been used in the paving of Garrison Avenue.

The parties appear also to have recognized that the paving could not possibly be completed within the time provided in the contract, because of the time required for the construction of the plant for the manufacture of the bricks and of the time necessarily lost from the work

of paving on account of the failure of the abutting property owners to construct the curb and guttering against which the pavement must rest and the chancellor's finding that the district was not entitled to any damages for failure to complete the work within the specified time, is also in accordance with the testimony.

The decree upon the items found in favor of appellants is correct and appellants are further entitled to recover the difference between the cost of the paving laid in concrete done by the board of improvement at the expense of the contractors and the price to be paid them therefor—$10,500, as found by the master, with interest, and to judgment here for that additional sum.

The decree is accordingly modified and as modified, affirmed.